IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-03358-PAB-KLM

LARRY BRANCH,

     Plaintiff,

v.

UNITED PARCEL SERVICE,

     Defendant.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Defendant's **Motion for Summary Judgment and Memorandum of Law in Support Thereof** [#77][1] (the "Motion").  Plaintiff, who is proceeding pro se,[2] filed a Response [#103] to the Motion, and Defendant filed a Reply [#104].  The Motion [#77] has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1.  *See* [#78].  The Court has reviewed the briefs, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court **RECOMMENDS** that the Motion [#77] be **GRANTED**.

---

[1]  "[#77]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Recommendation.

[2]  The Court must construe liberally the filings of pro se litigants.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## I.  Summary of the Case

At the outset, the Court must address the state of the summary judgment evidence. The Court construes the evidence in a light most favorable to Plaintiff as the nonmovant here.  *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1186 (10th Cir. 2015) ("We . . . recit[e] all summary-judgment evidence in the light most favorable to . . . the nonmovant."). However, there are two related issues with respect to the evidence provided by the parties.

First, Plaintiff attaches approximately 96 pages of exhibits to his Response [#103]. He asserts that these exhibits support his version of the case. However, he has not labeled his exhibits as separate documents, and, when discussing the evidence which purportedly supports his opposition to the Motion [#77], he only rarely references a specific document and never cites a specific page number where the Court can find the referenced information.  "[O]n a motion for summary judgment, it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record."  *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (internal quotation and citation omitted).  The Court is "not obligated to comb the record in order to make [Plaintiff's] arguments for him."  *See Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1199 (10th Cir. 2000).  Further, Local Rule 7.1(e) provides that "[e]very citation in a motion, response or reply shall include the specific page or statutory subsection to which reference is made."  D.C.COLO.LCivR. 7.1(e).  The Court is not required to sort through the unorganized documents submitted by Plaintiff.  *See* Fed. R. Civ. P. 56(c)(3) (stating that the Court "need consider only the cited materials").  The Court may, and has, considered other materials in the record.  *See id.*  However, the Court may not and has not done Plaintiff's job for him by organizing his submissions and

researching every submitted document to find support for the statements made in his briefing.

Second, Plaintiff failed to comply with the Chief Judge's Practice Standards (Civil Cases) § III.F.3.vi., which provide:

> Any party opposing the motion for summary judgment shall, in a section of the brief required by Rule 56.1(a) of the United States District Court for the District of Colorado Local Rules of Practice (Civil) styled "Response to Statement of Undisputed Material Facts," admit or deny the asserted material facts set forth by the movant. The admission or denial shall be made in separate paragraphs numbered to correspond to movant's paragraph numbering. Any denial shall be accompanied by a brief factual explanation of the reason(s) for the denial and a specific reference to material in the record supporting the denial.

In *Milam v. Pafford EMS*, 729 F. App'x 632, 636 (10th Cir. 2018), the Tenth Circuit Court of Appeals held that the District Court did not abuse its discretion by deeming admitted the undisputed facts set forth in the defendant's motion for summary judgment because the plaintiff failed to produce evidence or otherwise dispute the facts in the manner required by the Court's Local Rules. Fed. R. Civ. P. 56(e)(2) likewise provides that, "[i]f a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . ." In addition, the Court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(3). Because Plaintiff has not properly addressed Defendant's summary judgment evidence, the Court generally finds Defendant's evidence to be undisputed unless otherwise stated below.

Turning to the specific facts of the case, Defendant hired Plaintiff in September 1987 as a warehouse employee in its distribution center in Commerce City, Colorado, and

Plaintiff remains employed by Defendant today. *Motion* [#77] ¶ 1 (citing *Def.'s Ex. A, Depo. of Pl.* [#77-1] at 23:22-25, 24:6-9). At all times relevant to this action, Plaintiff worked as a feeder driver/tractor trailer driver. *Id.* ¶ 2 (citing *Ex. A* [#77-1] at 24:2-5). Plaintiff is a member of Teamsters Local No. 455, and the terms of his employment and disciplinary action are subject to the Collective Bargaining Agreement and the Teamsters Central Region and United Parcel Service Supplemental Agreement to the National Master United Parcel Service Agreement ("CBA"). *Id.* ¶ 3 (citing *Def.'s Ex. N, Excerpts of CBA* [#77-14] at 9-10). Pursuant to the CBA, as it relates to physical, mental, and other examinations required by a government body or Defendant, Defendant reserves the right to select its own medical examiner or doctor to examine employees at Defendant's expense. *Id.* ¶ 4 (citing *Ex. N* [#77-14] at 13-14).

Defendant's delivery vehicles run on either compress natural gas ("CNG") or diesel fuel. *Id.* ¶ 9 (citing *Def.'s Ex. C, Tractor Assignment Spreadsheet* [#77-3]). In early September 2016, Plaintiff claimed that he had been suffering from natural gas poisoning, which he attributed to driving Defendant's CNG trucks. *Id.* ¶ 5 (citing *Ex. A* [#77-1] at 93:8-16). Plaintiff sought medical treatment and filed a worker's compensation claim for this condition. *Id.* ¶ 6 (citing *Ex. A* [#77-1] at 93:8-16; *Def.'s Ex. B, Concentra Medical Records* [#77-2] at 2). On September 16, 2016, Plaintiff visited Concentra Medical Centers ("Concentra") and self-reported there that he had been inhaling CNG for two weeks; he was diagnosed with an inhalation injury. *Id.* ¶ 7 (citing *Ex. B* [#77-2] at 3, 5). Plaintiff's physicians reported that Plaintiff was to return to work but could not operate vehicles with CNG. *Id.* ¶ 8 (citing *Ex. B* [#77-2] at 2-48).

The fleet of vehicles at the distribution center where Plaintiff works consists of

approximately 60% CNG-powered vehicles and 40% diesel-powered vehicles.  *Id.* ¶ 10 (citing *Ex. C* [#77-3]).  After Plaintiff's first Concentra visit, Defendant accommodated Plaintiff's work restriction by allowing Plaintiff to only drive diesel-powered vehicles.  *Id.* ¶ 12 (citing *Ex. C* [#77-3]).  On September 30, 2016, during a follow-up appointment at Concentra, Plaintiff reported that he had not been exposed to any CNG in the previous two weeks because he was only driving diesel trucks.  *Id.* ¶ 11 (citing *Ex. B* [#77-2] at 8).  On October 10, 2016, Plaintiff again confirmed with Concentra that he was only driving diesel trucks.  *Id.* ¶ 13 (citing *Ex. B* [#77-2] at 14).  On May 9, 2017, Concentra re-evaluated Plaintiff and released him from care after Plaintiff confirmed that he was driving diesel trucks and was not driving a CNG truck.  *Id.* ¶ 15 (citing *Ex. B* [#77-2] at 41, 43-45).

Meanwhile, Plaintiff had also been referred by Concentra to National Jewish Health, a respiratory hospital, to further evaluate his inhalation injury; in January 2017, Karin Pacheco, M.D., diagnosed Plaintiff's inhalation injury as asthma. *Id.* ¶ 14 (citing *Ex. B* [#77-2] at 12; *Def.'s Ex. D, Records re: Asthma Diagnosis* [#77-4] at 2-3).  National Jewish Health monitored Plaintiff's asthma for more than two years, and on July 12, 2019, during his last visit there, Plaintiff reiterated that he was driving diesel vehicles which he felt were safer.  *Id.* ¶ 16 (citing *Ex. D* [#77-4] at 4-12).  From September 2016 on, Defendant has accommodated Plaintiff's condition and has not required Plaintiff to drive CNG vehicles. *Id.* ¶ 17 (citing *Ex. C* [#77-3]).

During the same time that Plaintiff's asthma was treated and monitored, Plaintiff complained about a rash.  *Id.* ¶ 18 (citing *Def.'s Ex. E, Aurora Medical Records* [#77-5] at 2-20).  On December 20, 2016, Plaintiff visited his primary care physician at Aurora Family Practice Group. P.C. ("Aurora") and was diagnosed with dry skin dermatitis.  *Id.* ¶ 19 (citing

*Ex. E* [#77-5] at 19).  During that visit, Plaintiff asked his physician for a note to present to Defendant for permission not to shave until the rash cleared.  *Id.* (citing *Ex. E* [#77-5] at 19).  The physician provided the requested note advising that Plaintiff could not shave for thirty days.  *Id.* (citing *Ex. A* [#77-1] at 125:13-14; *Ex. E* [#77-5] at 21).  On January 12, 2017, Plaintiff visited Aurora again complaining of a worsening rash, and he was prescribed hydrocortisone and directed not to shave for sixty days.  *Id.* ¶ 20 (citing *Ex. A* [#77-1] at 125:15-18; *Ex. E* [#77-5] at 17, 21).  On March 10, 2017, Plaintiff made a follow-up appointment for the rash and noted that the rash flared occasionally but was controlled.  *Id.* ¶ 21 (citing *Ex. E* [#77-5] at 15).  During that visit, Plaintiff was provided another note to excuse shaving.  *Id.* (citing *Ex. A* [#77-1] at 125:18-21; *Ex. E* [#77-5] at 21).

All of Defendant's employees, including Plaintiff, must agree to abide by Defendant's Appearance Guidelines, including facial hair grooming.  *Id.* ¶ 23 (citing *Def.'s Ex. F, Acknowledgment re: UPS Appearance Standards* [#77-6]).  Defendant makes exceptions to the Appearance Guidelines in order to accommodate religious beliefs and certain medical conditions.  *Id.* ¶ 24 (citing *Ex. G* [#77-7]).  As such, Defendant has developed and implemented a certification procedure for employees seeking a variance from the facial hair requirements of the Appearance Guidelines for medically-related reasons as outlined in the Variance to Appearance Standards policy.  *Id.* (citing *Ex. G* [#77-7]).  In order to obtain a variance based upon a medical condition, an employee must contact Defendant's Human Resources Service Center ("HRSC") and request and complete an Application for Variance.  *Id.* ¶ 25 (citing *Ex. G* [#77-7]).  The policy indicates that Defendant has the right, at its own expense, to require that an applicant for a variance see a doctor of its own choosing to confirm the medical condition and variance in question.  *Id.* (citing *Ex. G* [#77-7]).  Prior to

July 14, 2017, although Plaintiff had no-shave excuses from his physician, he did not complete the required Application for Variance to be excused from Defendant's shaving mandate. *Id.* ¶ 22 (citing *Ex. A* [#77-1] at 167:15-18; *Def.'s Ex. G, Variance Procedures and FAQs* [#77-7]).

On June 30, 2017, Division Manager Greg Pietrek ("Pietrek") approached Plaintiff about his beard, which clearly exceeded the Appearance Guidelines, and questioned whether Plaintiff had an approved variance. *Id.* ¶ 26 (citing *Ex. A* [#77-1] at 125:24-126:8; *Def.'s Ex. H, Pietrek Email* [#77-8]). Plaintiff told Mr. Pietrek that he had already received a variance to the Appearance Guidelines, but Mr. Pietrek confirmed with HRSC on July 2, 2017, that Plaintiff did not have an approved variance in place. *Id.* ¶ 27 (citing *Ex. H* [#77-8]). Mr. Pietrek informed Plaintiff that there was no approved variance on file for him and that he needed to complete an Application for Variance and follow the proper procedure for a variance. *Id.* ¶ 28 (citing *Ex. A* [#77-1] at 125:9-11, 166:19-167:6; *Ex. H* [#77-8]). On July 5, 2017, Plaintiff's physician completed the healthcare provider portion of the Application for Variance, advising that Plaintiff had been diagnosed with atopic dermatitis and should maintain a beard up to three inches in length. *Id.* ¶ 29 (citing *Def.'s Ex. I, Pl.'s First Variance Approval* [#77-9] at 2). HRSC approved the variance on July 14, 2017, stating: "Facial hair length is limited to 3". Sculpting of facial/neck hair is not permitted." *Id.* ¶ 30 (citing *Ex. A* [#77-1] at 125:14-16; *Ex. I* [#77-9] at 3).

At that point, Defendant exercised its right to require Plaintiff to be examined by a physician of its choosing to assess Plaintiff's medical condition and confirm the beard variance required. *Id.* ¶ 31 (citing *Ex. A* [#77-1] at 184:14-18; *Ex. H* [#77-8]). Plaintiff was scheduled to see a physician designated by Defendant, Dr. Matt Miller ("Miller") from Front

Range Occupational Medicine, LLC, on August 14, 2017. *Id.* ¶ 32 (citing *Ex. H* [#77-8]). Mr. Pietrek notified Plaintiff on August 10, 2017, of this appointment. *Id.* (citing *Ex. H* [#77-8]). Plaintiff had requested and was provided a Union Steward during an informal review of the variance procedure with Mr. Pietrek. *Id.* ¶ 33 (citing *Ex. H* [#77-8]). Mr. Pietrek made clear to Plaintiff that he was required to attend the scheduled appointment in order to comply with the variance procedure. *Id.* (citing *Ex. A* [#77-1] at 188:3-9; *Ex. H* [#77-8]). Mr. Pietrek further explained that if Plaintiff refused to either comply with the Appearance Guidelines or follow the variance procedure, he would be subject to discipline, up to and including termination. *Id.* (citing *Ex. A* [#77-1] at 188:3-9; *Ex. H* [#77-8]). Mr. Pietrek provided Plaintiff a copy of the variance procedure and the address for the August 14 appointment. *Id.* (citing *Ex. H* [#77-8]).

Plaintiff failed to attend his scheduled appointment. *Id.* ¶ 34 (citing *Ex. A* [#77-1] at 194:7-13; *Ex. H* [#77-8]). Mr. Pietrek tried re-scheduling Plaintiff's appointment for August 16, but Plaintiff told Mr. Pietrek that that day did not work for him. *Id.* ¶ 35 (citing *Ex. H* [#77-8]). Based on Plaintiff's request, his appointment was rescheduled to August 21, but Plaintiff did not attend this appointment either. *Id.* ¶¶ 36-37 (citing *Ex. A* [#77-1] at 196:7-13; *Ex. H* [#77-8]). The following day when asked why he failed to make the second appointment, Plaintiff told Mr. Pietrek that he had no intention of going to see Dr. Miller because Plaintiff refused to see a doctor whom he believed was not qualified to diagnose him. *Id.* ¶ 38 (citing *Ex. A* [#77-1] at 185:6-15; 189:15-19; 190:23-191:3; *Ex. H* [#77-8]).

Because Plaintiff refused to comply with the Appearance Guidelines and refused to comply with the variance procedure, on August 28, 2017, Defendant issued Plaintiff a written warning letter stating that continued failure to comply with either the appearance

guidelines or the variance procedure could result in termination.  *Id.* ¶ 39 (citing *Def.'s Ex. J, Aug. 28, 2017 Warning Letter* [#77-10]).   Based on his continued noncompliance, Defendant issued Plaintiff a Notice of Suspension on September 6, 2017, stating that Plaintiff would be suspended for three days, October 3-5, if he did not adhere to the Appearance Guidelines and comply with the variance procedure by then.  *Id.* ¶ 40 (citing *Def.'s Ex. K, Sept. 6, 2017 Suspension Letter* [#77-11]).   Defendant also issued Plaintiff a Notice of Termination informing Plaintiff that he would be terminated effective October 5 if he continued to be noncompliant.  *Id.* ¶ 41 (citing *Def.'s Ex. L, Sept. 7, 2017 Termination Letter* [#77-12]).   Plaintiff grieved all of these actions with the Union, and, on September 8, 2017, a local Union hearing was held for all of Plaintiff's grievances.  *Id.* ¶ 42 (citing *Ex. A* [#77-1] at 195:14-16, 200:22-201:1).   At that hearing, Plaintiff finally agreed to see Dr. Miller, and Defendant agreed to withdraw all of the discipline issued against Plaintiff.  *Id.* (citing *Ex. A* [#77-1] at 205:6-9).

On September 11, 2017, Plaintiff saw Dr. Miller, but they argued when Plaintiff told Dr. Miller that Dr. Miller's opinion did not matter to him because Dr. Miller's opinion was not a professional opinion.  *Id.* ¶¶ 43-44 (citing *Ex. A* [#77-1] at 191:14-20; *Def.'s Ex. M, Pl.'s Second Variance Approval* [#77-13]).   Nevertheless, Dr. Miller confirmed Plaintiff's diagnosis of atomic dermatitis and advised that Plaintiff should be allowed to keep a beard two inches in length.  *Id.* ¶ 45 (citing *Ex. M* [#77-13] at 2).   Defendant approved the second-opinion variance on September 12, 2017, as follows: "Facial/neck hair length is limited to 2" throughout his beard . . ."  *Id.* ¶ 46 (citing *Ex. M* [#77-13] at 3).   From December 2016 to the present, Defendant has allowed Plaintiff to grow a beard that exceeds its Appearance Guidelines, and Plaintiff continues to be employed as a feeder

driver with Defendant.  *Id.* ¶ 47-48 (citing *Ex. A* [#77-1] at 21:17-18; 204:14-16, 204:20-205:9).

Although not entirely clear, Plaintiff appears to assert five claims against Defendant under Title VII and the Americans with Disability Act ("ADA"): (1) discrimination under Title VII, (2) hostile work environment under Title VII, (3) retaliation under Title VII, (4) discrimination/failure to accommodate under the ADA,[3] and (5) retaliation under the ADA. As relief, Plaintiff seeks to "[h]old [Defendant] criminally liable," to "[k]eep [his] employment whole," and to "award [his] family & [him] punitive damages that exceed for the harm, distress and damage that they have caused." *Am. Compl.* [#7] at 15. In the present Motion [#77], Defendant seeks summary judgment in its favor on all claims.

## II.  Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

---

[3]  It is unclear whether Plaintiff is asserting a separate ADA discrimination claim from his ADA discriminatory failure-to-accommodate claim, but, regardless, Plaintiff has not directed the Court's attention to evidence adequate to support either one, as discussed below.

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2738 (4th ed. 2017).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works, Inc., v. City & Cty.*

*of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

Only documents that meet the evidentiary requirements of Fed. R. Civ. P. 56 may be considered for purposes of summary judgment. Rule 56(c) provides that:

> (1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]
> > . . .
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(1)-(4).

## III. Analysis

### A. Title VII

Plaintiff avers that he was subjected to discriminatory and harassing conduct because of his national original, Hispanic. Under Title VII, it is unlawful for an employer to discriminate against an individual on this basis. 42 U.S.C. § 2000e–2(a)(1); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

-12-

### 1.    Discrimination

Because Plaintiff points to no direct evidence of discrimination, the *McDonnell-Douglas* burden-shifting test applies.    *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985); *Duran v. LaForge N. Am., Inc.*, 855 F. Supp. 2d 1243, 1247-48 (D. Colo. 2012).  Under this burden-shifting test, Plaintiff must first make out a prima case.  *Id.*  A prima facie case of discrimination under Title VII requires a plaintiff to show: "(1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination."  *Harper v. Arrow Elecs.*, No. 21-1011, 2021 WL 6071625, at *3 (10th Cir. Dec. 21, 2021) (quoting *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007)).  Ultimately, "[t]he critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the . . . employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination.'"  *Plotke v. White*, 220 F.3d 405 F.3d 1092, 1100 (10th Cir. 2005) (citations omitted).

If Plaintiff makes out a prima facie case, "the burden shifts to Defendant to come forward with a legitimate, non-discriminatory basis for its employment decision."  *Duran*, 855 F. Supp. 2d at 1248.  "If Defendant does so, the inference of discrimination [created by the prima facie case] drops out and the burden shifts back to Plaintiff" to offer evidence that his protected status "was a determinative factor in the employment decision or that Defendant's non-discriminatory reason was merely pretext."  *Id.*  "A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence."  *Jencks v. Modern Woodmen of Am.*, 479 F.3d 1261, 1267 (10th Cir. 2007) (citation omitted).  "Pretext can be

shown by such weaknesses, implausibilities, inconsistencies, incoherence, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Id.*

Here, Defendant argues in part that Plaintiff cannot present any evidence in support of the second element of a prima facie discrimination claim, i.e., an adverse employment action. *Motion* [#77] at 10-15. "An adverse employment action includes acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Harper*, 2021 WL 6071625, at *4 (quoting *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1268 (10th Cir. 2005) (brackets and internal quotation marks omitted)). "Although we liberally interpret the second prong of the prima facie case and take a case-by-case approach, we will not consider a mere inconvenience or an alteration of job responsibilities to be an adverse employment action." *Harper*, 2021 WL 6071625, at *4 (quoting *Dick*, 397 F.3d at 1268) (internal quotation marks and alterations omitted). In short, a plaintiff must provide evidence of and explain how his employer's action "resulted in any significant change in [his] employment status, compensation, or benefits." *Harper*, 2021 WL 6071625, at *4.

Here, without citation to evidence, Plaintiff points to the following as constituting the discriminatory disparate treatment he purportedly endured:

a.   Purposely retaliate, harass, discriminate, badger and humiliate an employee that has a documented case of PTSD since 2013 and has been granted FMLA by the employer's Human Resource Office for this condition . . . ; b. [f]ailure to reasonable [sic] accommodate a simple request that had NO impact or proved to create an undue hardship or disruptive [sic] to the

operations of the company . . . ; c. [f]orce a 2nd opinion medical exam for a non-work-related condition that did not put the employee, employers or general public health or safety at risk . . . ; d. [v]iolated ADA reasonable accommodation when I was forced to use a CNG tractor against the orders of their chosen physicians and referred pulmonary specialist . . . ; e. [s]ubject to progressive disciplinary action leading up to termination while participating in 2 (protected classes) . . . ; f. [p]urposefully terminated on plaintiff's 30th year employment anniversary . . . ; [and] g. [s]ubject to racially inflammatory remarks in attempt to make plaintiff belligerent or threating [sic] . . . .

*Response* [#103] at 5-6.  For the following reasons, the Court finds that none of these alleged actions constitutes an adverse employment action.

First, a "claim for disparate treatment is based on a discrete act," not "a series of separate acts that collectively constitute one unlawful employment practice."  *Payan v. United Parcel Service*, 905 F.3d 1162, 1168 (10th Cir. 2018) (contrasting disparate treatment claims and hostile work environment claims) (internal quotation marks omitted). Thus, to the extent that Plaintiff points to a series of minor actions, they cannot collectively constitute a significant change in his employment status for purposes of his disparate treatment claim.  This includes isolated comments unless those comments have an impact on the employee's employment status, of which there is no indication here.  *See Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 533 (10th Cir. 1998) ("Courts considering the issue have held that 'unsubstantiated oral reprimands' and 'unnecessary derogatory comments' such as those alleged here are not included within the definition of adverse action absent evidence that they had some impact on the employee's employment status.").

Second, the only evidence before the Court is that Plaintiff was never terminated from his job and that, indeed, Plaintiff still works for Defendant.  *See, e.g.*, *Ex. A, Depo. of Pl.* [#77-1] at 23:22-25, 24:6-9.  Although Defendant issued Plaintiff a letter stating that he would be terminated from his position if he did not come into compliance with or obtain a

variance from Defendant's appearance requirements, an "unrealized threat" of termination is insufficient to demonstrate an adverse employment action. *See Henri v. Carbon Sch. Dist.*, No. 2:19-CV-00732-DAK-CMR, 2022 WL 280799, at *8 (D. Utah Jan. 31, 2022).

Third, there is no evidence before the Court that the warning letter or any other action to which Plaintiff points caused "a significant change in [Plaintiff's] benefits, eligibility for promotion, or employment status." *See id.* There is no indication that Defendant's actions affected hiring, firing, promotion, reassignment to a position with significantly different responsibilities, or a significant change in benefits. *See Harper*, 2021 WL 6071625, at *4. At most, such things as attending a second-opinion medical examination or use of a different fully-functioning truck constitute no more than "a mere inconvenience" for purposes of a disparate treatment claim. *See id.*

Thus, in the absence of evidence demonstrating an adverse employment action, the Court finds that Plaintiff has failed to present sufficient evidence of a prima facie case of Title VII disparate impact employment discrimination. Accordingly, given that there is no genuine issue of material fact, the Court **recommends** that the Motion [#77] be **granted** to the extent that summary judgment enter in favor of Defendant on this claim.

### 2. Hostile Work Environment

A plaintiff claiming harassment through a hostile work environment must show: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his protected class; and (4) the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment. *Payan*, 905 F.3d at 1168. For a "hostile environment claim to survive a

summary judgment motion, a plaintiff must show that a rational jury could find that the workplace was permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harper*, 2021 WL 6071625, at *5 (quoting *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005) (brackets and internal quotation marks omitted), *abrogated in part on other grounds by Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018)).

"To evaluate whether a working environment is sufficiently hostile or abusive, we examine all the circumstances, including: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance." *MacKenzie*, 414 F.3d at 1166. "In addition, the environment must be both subjectively and objectively hostile or abusive." *Id.* "The Supreme Court has instructed that courts judging hostility should filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of age-related jokes, and occasional teasing." *Id.* "This screening is in place to ensure that Congressional enactments such as the ADEA [and Title VII] do not become trivialized as a civility code." *Id.* "In particular, courts should filter out offhand comments, and isolated incidents (unless extremely serious)." *Id.*

Here, the Court finds that the conduct complained of by Plaintiff, to the extent supported by evidence, does not rise to the level of a hostile work environment. Plaintiff's Response [#103] includes many generalized comments about harassment but points to few firm details, with or without evidentiary support. Plaintiff states with the most specificity the

following: (1) a nurse for Defendant who was in charge of approving a beard variance request reached out to him about needing approval even when Plaintiff already had medical documentation to support it; (2) a labor manager issued the letter threatening to terminate Plaintiff from his job if Plaintiff did not come into compliance with or get a variance from the appearance requirements; (3) Plaintiff was forced to get a second-opinion medical examination; (4) Plaintiff was forced to use a CNG tractor against his doctor's orders; and (5) Plaintiff was terminated from his position on his thirtieth employment anniversary.[4] *Response* [#103] at 6-7.  The Court has already noted that there is no evidence to show that Plaintiff was ever terminated from his job and that, indeed, there is direct evidence to the contrary.  The remaining conduct appears to be no more than "ordinary tribulations of the workplace." *MacKenzie*, 414 F.3d at 1166.

Further, even assuming that such conduct could rise to the level of actionable harassment, there is insufficient evidence on which the Court could find that this harassment was based on Plaintiff's protected class or that the harassment altered a term, condition, or privilege of Plaintiff's employment to the extent that an abusive working environment was created.  *Payan*, 905 F.3d at 1168.  A hostile work environment claim generally requires "a steady barrage of opprobrious racial comments," which is simply not supported by the evidence here.  *See Alabi v. Vilsack*, 860 F. App'x 576, 583 (10th Cir. 2021).

Accordingly, given that there is no genuine issue of material fact, the Court

---

[4] Defendant points to some other conduct which Plaintiff had mentioned in his Complaint which could possibly have been asserted in support of a hostile work environment claim, but given Plaintiff's failure to discuss or even mention other conduct in his Response [#103], he appears to have abandoned those allegations as supportive of his hostile work environment claim.

**recommends** that the Motion [#77] be **granted** to the extent that summary judgment enter in favor of Defendant on Plaintiff's hostile work environment claim.

### 3.     Retaliation

Title VII forbids an employer from retaliating against an individual because the individual "has opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e–3(a).  Establishing a prima facie case of retaliation requires a plaintiff to prove "(1) that [he] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Harper*, 2021 WL 6071625, at *4 (quoting *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1233-34 (10th Cir. 2015)).  Ultimately, the plaintiff must provide "proof that the desire to retaliate was the but-for cause of the challenged action."  *Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).

Here, Defendant argues that Plaintiff cannot present evidence to support the second and third elements of this claim.  *Motion* [#77] at 18-19.  An adverse action for purposes of a Title VII retaliation claim is generally the same as for a Title VII disparate impact claim, i.e., an action "that causes a significant change in employment status or benefits." *Brown v. Austin*, 13 F.4th 1079, 1090 (10th Cir. 2021).  As with the disparate impact claim, the Court finds that Plaintiff has not provided sufficient evidence of an adverse action.  In addition to the Court's discussion above regarding adverse employment actions, the Court notes that, in *Brown v. Austin*, the Tenth Circuit found that even where the employee was placed on paid administrative leave and later issued a reprimand letter, such actions did

not rise to the level of a materially adverse action for purposes of a Title VII retaliation claim in the absence of evidence showing that the conduct carried with it "a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects."  13 F.4th at 1091-92 (quoting *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996).  Here, the actions purportedly taken by Defendants do not rise to this level.

Accordingly, given that there is no genuine issue of material fact, the Court **recommends** that the Motion [#77] be **granted** to the extent that summary judgment enter in favor of Defendant on Plaintiff's Title VII retaliation claim.

**B.     ADA**

The ADA, as well as the accompanying Americans with Disabilities Act Amendments Act ("ADAAA"), is meant to end "discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(1).

**1.     Discrimination and Failure to Accommodate**

Under the ADA, the term "discriminate" includes not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified applicant, unless the accommodation would impose an undue hardship on the operation of the business of the covered entity.  42 U.S.C. § 12112(b)(5)(A).  To state a disability discrimination claim, Plaintiff must show that he is (1) disabled within the meaning of the ADA; (2) is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) has suffered an adverse employment action because of his disability.  *See* 42 U.S.C. § 12112(b); *Exby-Stolley v. Bd. of Cty. Comm'rs*, 906 F.3d

900, 914 (10th Cir. 2018).

The Court begins with the first element, i.e., whether Plaintiff has shown that he is disabled within the meaning of the statute.  A disability is defined as a "physical or mental impairment that substantially limits one or more major life activities" of the person.  42 U.S.C. § 12102(1).  To support this element, a plaintiff "must (1) show he has a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show that the impairment substantially limits one or more of those activities." *Wehrley v. Am. Family Mut. Ins. Co.*, 513 F. App'x 733, 740 (Table) (10th Cir. 2013) (citing *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1129 (10th Cir. 2003)).

Here, while Plaintiff mentions PTSD and chronic pain, his Response [#103] cannot be reasonably read to be basing his ADA claim on these alleged impairments.[5]  Rather, the entirety of his argument is based on his skin condition and (although he does not use the word in his brief) his diagnosed asthma.  *Response* [#103] at 1-4.  Regarding his skin condition, i.e., atopic dermatitis, Plaintiff has provided no evidence regarding how this condition "substantially limits one or more major life activities" for him.  *See* 42 U.S.C. § 12102(1).  He states (without citing supporting evidence) that this condition is treated by prescriptions and is "very uncomfortable" and makes him "very self-conscious," but these statements alone do not identify any major life activity which is substantially limited by the condition.  Thus, to the extent Plaintiff's claim here is based on this condition, the Court

---

[5]  Even if Plaintiff is actually intending to base his ADA claim on these conditions, the Court finds that he has not identified one or more appropriate major life activities and shown that the impairments substantially limit one or more of those activities.  See *Wehrley*, 513 F. App'x at 740. Thus, entry of summary judgment in favor of Defendant would be appropriate here to the extent the claim might be based on these conditions.

finds that there is no genuine issue of material fact and that summary judgment in favor of Defendant is appropriate.

Regarding Plaintiff's asthma, Plaintiff asserts without citation to evidence that his request to drive a diesel truck was not honored for parts of 2019 and 2020. *Response* [#103] at 2-3. However, the only evidence before the Court is to the contrary. *See, e.g.*, *Ex. A, Depo. of Pl.* [#77-1] at 37 (stating that Defendant "encouraged" or "enticed" him to take a natural gas truck but that he was "not forced" to take one). Plaintiff has not directed the Court's attention to any evidence that his request to drive a diesel truck was not accommodated. Thus, the Court finds that Plaintiff has failed to show that there is a genuine issue of material fact regarding whether Defendant accommodated Plaintiff's asthma.

Accordingly, given that there is no genuine issue of material fact, the Court **recommends** that the Motion [#77] be **granted** to the extent that summary judgment enter in favor of Defendant on Plaintiff's discrimination/failure-to-accommodate claim.

### 2. Retaliation

A prima facie case of retaliation under the ADA requires the plaintiff to show that he (1) engaged in protected activity; (2) suffered a material adverse action; and (3) a causal connection exists between the protected activity and the adverse action. *Hermann v. Salt Lake City Corp.*, 21 F.4th 666, 679 (10th Cir. Dec. 20, 2021). Unlike an ADA discrimination claim, a plaintiff asserting an ADA retaliation claim does not need to show that he suffered from an actual disability as long as he had a "reasonable, good faith belief the statute ha[d] been violated." *Wehrley*, 513 F. App'x at 740 (quoting *Selenke v. Med. Imaging of Colo.*,

248 F.3d 1249, 1264 (10th Cir. 2001)).  Under the first element, "protected activity" includes requesting an accommodation. *Aubrey v. Koppes*, 975 F.3d 995, 1015-16 (10th Cir. 2020).

Here, Defendant argues that Plaintiff is unable to meet the second and third elements of his retaliation claim.  *Motion* [#77] at 24.  The Court finds that this claim fails for reasons previously discussed in this Recommendation, specifically that Plaintiff has not shown that he suffered a material adverse action.  The Court notes that, with respect to this claim, it is unclear what retaliatory action Plaintiff asserts.  He contends that, when he made his accommodation requests, Defendant did not immediately agree to them and instead asked for second opinions, *see Response* [#103] at 1-4; however, the undisputed evidence shows the second opinions were at Defendant's own expense and pursuant to the CBA which governed Plaintiff's employment with Defendant.  Based on the record before it, the Court cannot find that Plaintiff suffered a material adverse action or, even if he did, that there is evidence of a causal connection between the adverse action and his request for accommodation.

Accordingly, given that there is no genuine issue of material fact, the Court **recommends** that the Motion [#77] be **GRANTED** to the extent that summary judgment enter in favor of Defendant on Plaintiff's ADA retaliation claim.

### IV.  Conclusion

For the foregoing reasons,

IT IS HEREBY **RECOMMENDED** that the Motion [#77] be **GRANTED**, that summary judgment enter in favor of Defendant on all claims, and that this case be **CLOSED** after entry of Final Judgment.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.   A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corrs.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  February 7, 2022

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge